UNITED STATES of America, Plaintiff–Appellee,

v.

Harry DUPREY, Juan Bolivar and Cesar A. Bolivar, Defendants–Appellants.

Nos. 88–1747, 88–1757 and 88–1782.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1989.

Decided July 12, 1989.

Rehearing Denied Dec. 1, 1989.

James G. Richmond, U.S. Atty., Andrew B. Baker, Hammond, Ind., Rick L. Jancha, Office of the U.S. Atty., South Bend, Ind., for the U.S.

Laura L. Larson, Chicago, Ill., for Cesar A. Bolivar.

Juan Bolivar, Chicago, Ill., pro se.

David S. Morris, Chicago, Ill., Daniel H. Pfeifer, Sweeney, Pfeifer & Blackburn, South Bend, Ind., for Juan Bolivar.

Anthony D. Kowals, Voor, Allen, Fedder, Herendeen & Kowals, South Bend, Ind., for Harry Duprey.

Before CUDAHY and EASTERBROOK, Circuit Judges, and HENLEY, Senior Circuit Judge.[1]

HENLEY, Senior Circuit Judge.

In these consolidated appeals, two defendants, Juan Bolivar and Harry Duprey, challenge various aspects of their convictions for numerous drug-related charges. For reversal, Duprey argues that the district court erred in (1) permitting certain in-court identification testimony; (2) admitting certain identification testimony of a police officer; (3) holding that he lacked standing to challenge the search of a 1978 Ford Fairmount; and (4) refusing to grant his motion for acquittal. Juan Bolivar challenges the sufficiency of the evidence against him. A third defendant, Cesar A. Bolivar, joins Duprey and Juan Bolivar in asserting that the district court erred in

1. The Honorable J. Smith Henley, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

sentencing them under 21 U.S.C. § 841(b) as amended in 1986. We conclude that the various assignments of error challenging the defendants' convictions are without merit and affirm those portions of the cases. However, we agree that some adjustment in sentencing is required; thus the sentences are vacated and the cases remanded for resentencing.

## I.

On October 17, 1987, as part of an ongoing investigation, Corporal Terry Miller of the narcotics division of the South Bend, Indiana, Police Department went to Room 12 at the Kenrose Motel in South Bend to consummate a drug sale arranged by a confidential informant. Officer Miller and the informant were admitted into the room by defendant Cesar Bolivar. Cesar's younger brother Juan was also present. Miller purchased 1.77 grams of cocaine from Cesar. In addition, Miller and Cesar made tentative arrangements for the purchase of a kilogram of cocaine which Cesar planned to obtain from New Jersey.

Through the informant, the sale of the kilogram was set for October 20, 1987. The site chosen for the transaction was the parking lot of the North Village Mall in South Bend. Miller and several other officers arrived at the Mall at approximately three o'clock that afternoon. Shortly thereafter, the informant arrived in a separate vehicle followed by Cesar Bolivar, who arrived in a 1988 Chevrolet Corsica, and Juan Bolivar and Harry Duprey, who arrived together in a 1978 Ford Fairmount. After the defendants had left their vehicles, Cesar Bolivar and Miller entered the Ford while Duprey and Juan Bolivar conducted countersurveillance. Cesar retrieved a Cheerios box from behind the front seat of the car and removed the cocaine from it. Miller then signaled to the other officers present at the scene, and the three defendants were arrested. Searches of the defendants produced weapons, large amounts of cash and various items tending to connect the defendants to one another. A search of the Ford yielded 983 grams of 97% pure cocaine and some ammunition.

A federal grand jury returned a four-count indictment charging all three defendants with conspiracy to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession with intent to distribute 1000 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of firearms during the commission of a federal felony in violation of 18 U.S.C. §§ 924(c)(1) and (2). In addition, Cesar Bolivar was charged with possession with intent to distribute 2 grams of cocaine on October 17, 1987 in violation of 21 U.S.C. § 841(a)(1).

Cesar Bolivar pleaded guilty to the possession with intent to distribute counts. The conspiracy and firearm charges against him were severed from the case against Juan Bolivar and Duprey. The case against the latter two defendants was tried to a jury, which returned a verdict of guilty on all three counts. Thereafter, the district court sentenced Cesar Bolivar to twelve years imprisonment on the conspiracy count and twenty years on the count charging possession with intent to distribute 1000 grams of cocaine, the sentences to be served concurrently. Juan Bolivar was sentenced to consecutive terms of ten years on both the conspiracy and possession with intent to distribute counts, and to a concurrent five year term on the count charging possession of a firearm. Harry Duprey was sentenced to consecutive terms of ten and eighteen years on the conspiracy and possession with intent to distribute counts respectively, and to a concurrent term of five years on the firearm count. These appeals followed.

## II.

*A. In-court identification testimony.* Duprey's first assignment of error concerns his in-court identification by Donna Gimson, a clerk at the Knight's Inn motel in South Bend. Gimson testified that she was on duty October 20, 1987 when, at approximately 8:30 a.m., a man named Peter Smith and another man checked into the motel. That night the police showed Gimson photographs of Juan and Cesar Bolivar; she identified Cesar as the man who

had checked in under the name Peter Smith. Gimson indicated that Juan Bolivar was not the man at the motel with Cesar.[2]

On February 17, 1988, a week prior to trial, the Assistant United States Attorney handling the case showed Gimson a photographic display consisting of the arrest photos of the three defendants. These photos depicted the defendants with their hands cuffed behind their backs, sitting in postures of submission. Gimson indicated that she was not sure whether she could identify the man who had accompanied Cesar at the motel. As Gimson walked into the courtroom at trial, however, she informed the Assistant United States Attorney that she recognized Duprey as the man who had been with Bolivar.[3] Duprey objected to Gimson's subsequently proffered in-court identification on the ground that it was tainted by the allegedly improper photographic display shown to her the previous week. The objection was overruled.

On appeal, Duprey reiterates his contention that the district court erred in permitting the in-court identification because it resulted from an unduly suggestive photographic display. In particular, Duprey contends that the display was improper because (1) on October 20, 1987 Gimson was shown a display containing photos of only Juan and Cesar Bolivar but in February, 1988 she was shown a display which also contained a photograph of Duprey, placing unfair emphasis on it; and (2) the photographic display shown to Gimson in February, 1988 depicted the defendants with their arms behind their backs immediately after being taken into custody. In addition, Duprey argues that the in-court identification does not carry sufficient indicia of reliability on its own because (1) at the time that Gimson allegedly observed Duprey, her focus was on Cesar Bolivar, who was checking into the motel; (2) Gimson's description of the person accompanying Boli-

var included an inaccurate recitation of his clothing; and (3) four months elapsed between Gimson's alleged opportunity to observe Duprey at the motel and the date of the trial.

Recently, in *Kubat v. Thieret*, 867 F.2d 351, 357 (7th Cir.1989), this court reiterated the analysis undertaken in determining the admissibility of challenged identification testimony. The test employed in making this determination is two-part. First, the defendant bears the burden of establishing that the identification procedure was impermissibly suggestive. If the defendant satisfies this burden, the court must consider "whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification—or stated in the affirmative, whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *Id.; see also Manson v. Brathwaite*, 432 U.S. 98, 107–14, 97 S.Ct. 2243, 2249–52, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). Thus, if an initial confrontation procedure is found to have been impermissibly suggestive, a subsequent in-court identification will nevertheless be permitted if it was reliable in the totality of the circumstances. *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382; *United States v. L'Allier*, 838 F.2d 234, 239 (7th Cir.1988).

Here, we agree with Duprey that the circumstances of the photographic display shown to Gimson the week prior to the trial were constitutionally intolerable. Initially, we believe that the use of photos of the defendants with their hands cuffed behind their backs and sitting in postures of submission was inherently suggestive. This is particularly true where, as here, the display contained only three photographs, one of Cesar Bolivar, whom Gimson had already identified, another of Juan Bolivar,

---

**2.** The identification of Duprey as having been with Bolivar was important to the government's case because Duprey's line of defense at trial was that he did not know the Bolivars and fell upon the drug bust inadvertently.

**3.** There is some unclarity as to whether Gimson volunteered this information on her own initiative as she entered the courtroom or whether the Assistant United States Attorney prompted her to do so. If in fact the latter occurred, the circumstances do not require reversal but may merit disapproval.

whom Gimson had previously indicated was not the individual accompanying Cesar at the motel, and one of Duprey. *See Hudson v. Blackburn*, 601 F.2d 785, 787–88 (5th Cir.1979), *cert. denied*, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980) (photographic identification procedure found impermissibly suggestive where display consisted of only two photos, one of defendant and the other of a codefendant). Moreover, the use of the display is troublesome because it was unnecessary; Duprey had been in custody approximately four months prior to February of 1988, and thus the government easily could have obtained less suggestive photos or conducted a lineup. *See United States v. Stubblefield*, 621 F.2d 980, 983 (9th Cir.1980) (lack of necessity of post-arrest photographic display is a consideration in assessing propriety of display).

 Nevertheless, despite the suggestivity of the display, we conclude under the second prong of our analysis that Gimson's in-court identification contained sufficient indicia of reliability to preclude a substantial likelihood of irreparable misidentification. *See Manson*, 432 U.S. at 114, 97 S.Ct. at 2253. The reliability of an identification is determined by an evaluation of the following factors: the witness's opportunity to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–83; *Dooley v. Duckworth*, 832 F.2d 445, 447 (7th Cir. 1987), *cert. denied*, 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988).

Applying these factors, we find the following of particular significance. Ms. Gimson testified that she observed the two men in the motel lobby for approximately five minutes. Her testimony indicates that her level of attention was extremely sharp; she recalled details of the men's conversation concerning how they were planning to split the cost of the room. Furthermore, Gimson's description of the man accompanying Cesar Bolivar was accurate except that she inverted the colors of his pants and shirt. Although Duprey's claims concerning the passage of time between Gimson's opportunity to observe him at the motel and the in-court identification and her inability to identify him from the photographic display are meritorious considerations, they bear only upon the weight of the testimony and do not render it inadmissible. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254; *see also United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). Thus, we conclude that when the totality of the circumstances is considered, Gimson's in-court identification was inherently reliable and that this reliability outweighs the suggestive influences of the photographic display.

 *B. Testimony of Officer Skaggs.* Duprey next argues that the district court erred in permitting Police Officer Randy Skaggs to testify with respect to the clothing that a man, allegedly Duprey, was wearing early in the morning the day of the defendants' arrests. Skaggs's identification was important to the government because the government attempted to establish that Cesar Bolivar and Duprey drove to New Jersey to obtain the kilogram of cocaine; Skaggs stopped Bolivar and a passenger in Ohio for speeding, allegedly on the return trip from New Jersey. Although Skaggs was shown a photograph of Duprey in the clothing he was wearing the day of his arrest and identified him as the man who had been travelling with Bolivar, the district court disallowed Skaggs's identification testimony on the ground that the use of the photographic display was unduly suggestive. The court permitted Skaggs to testify, however, concerning the clothing worn by the passenger in the automobile. We find no error in this regard.

The district court disallowed Skaggs's identification testimony because the only physical feature of the passenger Skaggs could describe was that he was hispanic.

When Skaggs was later shown four photographs, one of each of the defendants, all hispanics, and another of a nonhispanic individual, he identified Duprey as the passenger. In the district court's view, this was an insufficient basis for a subsequent in-court identification.[4] Skaggs testified, however, that when he was talking to Bolivar he kept his flashlight focused on the passenger's hands for safety purposes. Skaggs stated that he thus specifically recalled the passenger's clothing. We believe that this laid an adequate foundation for the district court's decision to admit Skaggs's testimony. Although Duprey argues that allowing Skaggs to testify with respect to the passenger's clothing was essentially the equivalent of allowing him to identify Duprey, we cannot agree. As indicated, Skaggs had no independent recollection of Duprey's physical features other than that he was hispanic, something directly bearing upon the suggestivity of the photographs shown to him. Skaggs testified, however, that he independently recalled the passenger's attire and set forth an explanation for this recollection, making this testimony much more reliable. Furthermore, we trust the jury's ability to weigh the accuracy of Skaggs's testimony. In short, we find no error in the district court's ruling.

*C. Standing.* Next, Duprey argues that the district court erred in concluding that he lacked standing to challenge the search of the 1978 Ford Fairmount allegedly owned by Cesar Bolivar and driven by Juan Bolivar to the Mall in South Bend. Duprey argues that he had an expectation of privacy in the car based upon the following: (1) his role as a passenger in the vehicle; (2) the fact that he had in his wallet a certificate of title to the automobile; and (3) the fact that he and Bolivar locked the car after exiting.

A defendant objecting to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). This inquiry

is said to embrace two questions: (1) whether the individual, by his conduct, has exhibited a subjective expectation of privacy; and (2) whether such an expectation is justifiable in the circumstances. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Several factors have been recognized as relevant in answering these questions, including: (1) whether the defendant has a possessory interest in the place searched; (2) whether he has a right to exclude others therefrom; (3) whether he has exhibited a subjective expectation that the place remain free from governmental invasion; (4) whether normal precautions were taken to protect his privacy; and (5) whether he was legitimately on the premises. *United States v. Peters,* 791 F.2d 1270, 1280 (7th Cir.) (quoting *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982)), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986).

After considering these factors, we conclude that Duprey has failed to satisfy his burden of proof. Duprey was not in possession of the car at the time of the search nor did he claim legal ownership. Moreover, he has set forth no facts tending to establish his control over the vehicle; he had not driven it, he did not have the keys, he presented no evidence that he had driven it before, and there is nothing in the record tending to indicate that he had a right to control the car to the exclusion of others—quite to the contrary, the record establishes that Cesar Bolivar exercised such control as demonstrated by his letting Officer Miller into the vehicle. Nor are we persuaded by Duprey's insistence that his holding the certificate of title in his wallet is strong evidence of his possessory interest. The whereabouts of the certificate is a mechanical fact having little bearing on the relevant inquiry in determining standing, whether Duprey had a legitimate expectation of privacy in the vehicle. Furthermore, the certificate was not in Duprey's name, but was in the name of Jeffrey Smith, from whom Cesar Bolivar testi-

---

**4.** The government does not challenge this determination.

fied he purchased the vehicle. Moreover, at trial Duprey disclaimed any connection with the automobile. In these circumstances, we hold that Duprey did not exercise sufficient control over the vehicle to provide a reasonable expectation of privacy therein. Accordingly, the district court properly held that he lacked standing to challenge the search of the Ford. *See United States v. Peters,* 791 F.2d at 1281–82.

■ *D. Sufficiency of the evidence against Duprey.* Lastly, Duprey contends that the district court erred in refusing to grant his motion for judgment of acquittal. Specifically, Duprey argues that no evidence indicates that he had actual possession of the cocaine, that there is insufficient evidence of his association with Cesar Bolivar and that there is no evidence that he shared the Bolivars' intent to distribute.

A defendant challenging the sufficiency of the evidence against him bears a heavy burden. *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). In evaluating such a claim, we "review all the evidence and all the reasonable inferences that can be drawn ... [therefrom] ... in the light most favorable to the government." *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir. 1984). Our task is to determine "whether, after viewing the evidence in [this] light ..., '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). "[O]nly when the record contains no evidence, regardless of how it is weighed, from which the [trier of fact] could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971).

Clearly, a rational trier of fact could and did determine beyond a reasonable doubt that Duprey was guilty of the charges against him. Duprey accompanied the Bolivars to the site of the drug transaction armed with a loaded .32 caliber revolver and carrying over $5,000.00 in cash. Once at the site, he conducted countersurveillance over the transaction. Moreover, the record contains a legion of evidence including photographs, motel receipts and the testimony of various witnesses linking Duprey to the Bolivars and the defendants' drug-related activities. Clearly, this evidence establishes Duprey's guilt of possession of cocaine, or in the alternative, aiding and abetting possession by Cesar Bolivar.[5]

■ *E. Sufficiency of the evidence against Juan Bolivar.* Juan Bolivar also challenges the sufficiency of the evidence supporting his conviction, arguing primarily that the evidence against him was almost exclusively circumstantial and that his brother, Cesar, in fact negotiated the drug transaction with the police. We dispose of this argument summarily for reasons comparable to those set forth in the preceding section. Juan Bolivar arrived with Duprey at the site of the drug transaction armed with a .357 Magnum and conducted countersurveillance of the deal. This, along with the additional evidence of Juan's involvement in the threesome, supports the jury's verdict. *See United States v. Radtke,* 799 F.2d 298, 302 (7th Cir.1986) (circumstantial evidence need not exclude every reasonable hypothesis of innocence as long as the total evidence permits a conclusion of guilt beyond a reasonable doubt).

*F. Sentencing.* The last issue presented in these appeals concerns the application of 21 U.S.C. § 841(b), as amended in 1986, to the crimes charged in these cases. The defendants argue that the district court erred in sentencing them under the amended version of the statute because neither of the amendments in question was in effect at the time the charged offenses were com-

---

**5.** Duprey does not challenge the sufficiency of the evidence on the conspiracy or firearm counts.

mitted. While in its brief the government has stoutly defended the application of § 841(b) as amended to the cases at hand, in oral argument government counsel essentially conceded that some adjustment of sentences is necessary.

Applying § 841(b) as amended, the district court enhanced the defendants' sentences and imposed a four-year term of supervised release. *See* Narcotics Penalties and Enforcement Act of 1986, Pub.L. No. 99–570, §§ 1002, 1004, 100 Stat. 3207, 3207–2 to 3207–6 (1986). We agree with the defendants that the district court erred in imposing terms of supervised release because § 1004 has a delayed effective date and does not apply to crimes committed before November 1, 1987. *See United States v. Byrd,* 837 F.2d 179, 181 (5th Cir. 1988); *see also United States v. Padilla,* 869 F.2d 372, 381 (8th Cir.1989). Accordingly, the imposition of terms of supervised release must be vacated and the cases remanded for the imposition of special parole terms under 21 U.S.C. § 841(b)(1)(B) (Supp. II 1984).

However, we disagree with the argument that the district court erred in applying the sentence enhancement provisions of § 1002 because these provisions also took effect on November 1, 1987. A number of circuits have considered this argument and have concluded, after examining the relevant Acts, that the increased penalty provisions embodied in § 1002 became effective immediately upon the date of the statute's enactment, October 27, 1986. *See, e.g., United States v. Padilla,* 869 F.2d at 381–82; *United States v. Levy,* 865 F.2d 551, 559 n. 4 (3d Cir.1989); *United States v. Meyers,* 847 F.2d 1408, 1414–16 (9th Cir.1988). We agree with this construction of the Act. Congress explicitly so provided for those sections having a delayed effective date. *See, e.g.,* Pub.L. No. 99–570, §§ 1004(b), 1006(a)(4), 1007(b), 1009(b), 100 Stat. 3207–6 to 3207–8. No such mention of a delayed effective date was made with respect to the sections enhancing the penalty provisions of § 841(b). Accordingly, employing general provisions of statutory construction under which it is assumed that an act takes effect on the date of its enactment, *see Meyers,* 847 F.2d at 1415, we agree with the Third, Eighth and Ninth Circuits that the sentencing enhancement provisions embodied in § 1002 took effect October 27, 1986, and thus that they apply to the crimes at hand. It therefore follows that the district court did not err in sentencing the defendants under these provisions.

Accordingly, we affirm the convictions of Harry Duprey and Juan Bolivar; however, as provided in this opinion, their sentences, as well as that of Cesar Bolivar, are vacated and the cases remanded to the district court for resentencing under the appropriate law.