979 F.2d 853
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Dan SALAS, Defendant/Appellant.
 No. 92-2056.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 9, 1992.*
Decided Nov. 17, 1992.
 
 Before CUDAHY, POSNER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Dan Salas pleaded guilty to possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). During pretrial proceedings, Salas moved to suppress certain evidence that had been obtained through the warrantless stop and search of a van in which he had been a passenger. The district court ruled that the stop and search had been supported by probable cause, and that in any case Salas lacked standing to challenge the search of the van. As part of his conditional plea agreement, Salas preserved his right to challenge the district court's denial of the motion to suppress. See Fed.R.Crim.P. 11(a)(2). Finding no error in the district court's ruling, we affirm.
 
 I.
 FACTS
 
 2
 On July 26, 1991, Officer Richard J. Mussey of the Rock County, Wisconsin Metro Narcotics Unit spoke with informant Kent Peterson by telephone. Peterson told Officer Mussey that a Danny Salas of Rockford, Illinois was going to bring approximately six ounces of cocaine to Janesville, Wisconsin later that day. Peterson gave Officer Mussey a reasonably detailed physical description of Salas,[1] stated that Salas would be travelling in a vehicle bearing Illinois license plates, and that he would be arriving in approximately an hour and a half, accompanied by at least one other person, his brother-in-law. Peterson also stated that Salas would be arriving on Cherry Street, a dead-end street where Peterson lives. To corroborate this information, Officer Mussey contacted Detective Iasparro of the Winnebago County Metropolitan Enforcement Group in Rockford, Illinois. Detective Iasparro stated that he knew of Danny Salas, and that Salas was a "known drug dealer in the area ... easily capable of bringing up six ounces of cocaine." Officer Mussey asked Detective Iasparro for a physical description of Salas, which proved to be almost identical to the description given by the informant Peterson.[2] Officer Mussey then advised Detective Gehl, supervisor of the Rock County Metro Narcotics Unit, of the information he had, and consulted with Detective Gehl concerning the reliability of Peterson. Detective Gehl confirmed that Peterson had been supplying reliable information to the Metro Narcotics Unit since the approximate time of its inception in 1981, and that Peterson had supplied accurate information to him personally concerning a marijuana case.
 
 
 3
 Officer Mussey then determined from another officer that Peterson had called the Rock County Metro office approximately two weeks earlier and had stated that Salas would be in the Janesville, Wisconsin area with cocaine, but that Peterson was unable to state a specific time period in which this was to occur. Based on this information, the information obtained from Detective Iasparro and Peterson, as well as Peterson's reputation for reliability, Officer Mussey and Detective Gehl set up a surveillance of Cherry Street near Peterson's residence at 3:15 p.m. that afternoon.
 
 
 4
 When Salas had not arrived by 4:00 p.m., Officer Mussey telephoned Peterson from the surveillance location concerning the delay, and asked Peterson to try to reach Salas and obtain more information. Peterson called back within a short time and told Officer Mussey that Salas was about to leave Rockford for Janesville.
 
 
 5
 During the one and one-half to two hour surveillance of Cherry Street, Officer Mussey observed four or five cars travelling on the street. At approximately 5:00 p.m., Officer Mussey observed a van driving south, toward Peterson's residence. Through the front windshield, Officer Mussey saw three men in the van, the driver, a back seat passenger, and a front seat passenger. Officer Mussey determined that the back seat passenger had short hair, glasses, and was about thirty years old, and thus could be Salas. Officer Mussey also noticed that the front seat passenger appeared to have short, dark hair, and could also fit the description of Salas. As the van drove past the surveillance team, Officer Mussey saw that, unlike other vehicles he had observed on Cherry Street that afternoon, this one had Illinois license plates. Officer Mussey then ordered that the van be stopped.
 
 
 6
 A total of four police cars, of which two were marked, converged on the van to perform a "felony vehicle stop," used in circumstances where police consider the stop to pose a relatively high risk to their safety. Police officers had their guns drawn and pointed at the passenger area of the van, and through a loudspeaker ordered the occupants of the van to exit slowly, one by one, walking backwards toward the police. Each of the three occupants of the van was handcuffed and placed in the rear of a squad car. As Salas was being removed from the van, a police officer asked him his name, and he replied "Dan Salas." The van was then searched. A semi-automatic .22 caliber pistol was found underneath the dashboard, and a brown paper bag containing a plastic baggie with a quantity of a white, powdery substance was found on the passenger's side of the front floorboard of the van. This substance later proved to be cocaine. The occupants of the van, Kenneth L. Gilgan, Dan Salas, and Donald R. Freeman, were then advised that they were under arrest, and were taken to the Rock County Jail.
 
 
 7
 A federal grand jury indicted Salas, Gilgan, and Freeman, charging them with possession of cocaine with intent to distribute, and possession of a firearm during the commission of a federal drug trafficking crime. During pretrial proceedings, Salas moved to have all evidence which had been obtained during the stop and search of the van suppressed on the ground that it was the fruit of an illegal search and seizure. Gilgan, the owner of the van, joined in this motion. At a joint evidentiary hearing, the district court denied both motions. Gilgan's motion was denied on the merits, and Salas's motion was denied for lack of standing to object to the search.
 
 
 8
 After the motions to suppress were denied, Salas entered into a plea agreement with the government, and agreed to plead guilty to the cocaine trafficking charge in return for the government's motion to dismiss the firearms charge. The district court accepted Salas's guilty plea and granted the government's motion to dismiss the firearms charge. Prior to sentencing, Salas obtained a new attorney. With the government's consent, Salas's counsel secured leave of the district court to condition Salas's guilty plea upon the reservation of Salas's right to appeal the court's denial of his motion to suppress. Salas then filed a timely notice of appeal.
 
 II.
 ANALYSIS
 
 9
 A. Salas's Standing to Challenge the Search.
 
 
 10
 The proponent of a motion to suppress bears the burden of proving that his own Fourth Amendment rights have been infringed by the challenged search. Rakas v. Illinois, 439 U.S. 128, 130-31 n. 1, 133-34, 99 S.Ct. 421, 424 n. 1, 425 (1978); United States v. Fuesting, 845 F.2d 664, 671 (7th Cir.1988). To satisfy this burden, he must show that he had a legitimate expectation of privacy in the area searched. Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561 (1980); United States v. Duprey, 895 F.2d 303, 309 (7th Cir.1989), cert. denied, 495 U.S. 906, 110 S.Ct. 1927 (1990). This inquiry embraces two questions: (1) whether the individual, by his conduct, has exhibited a subjective expectation of privacy in the area searched, and (2) whether that expectation is one which society regards as objectively reasonable. Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580 (1979); Duprey, 895 F.2d at 309. While a possessory interest in the place or thing searched does not determine standing to assert Fourth Amendment rights, Rakas, 439 U.S. at 143, 99 S.Ct. at 430, such an interest is important to our inquiry because of society's shared belief that ownership creates a reasonable expectation of freedom from government intrusion. Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516 (1967) (Harlan, J., concurring); United States v. Powell, 929 F.2d 1190, 1194-95 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 584 (1991).
 
 
 11
 In this case, Salas has failed to satisfy his burden. Salas had no property or possessory interest in the van, and had explicitly denied a property interest in the cocaine seized from the van.[3] See Rakas, 439 U.S. at 148, 99 S.Ct. at 433. Furthermore, Salas has asserted no facts tending to establish that he had any control over the van or a right to exclude others from it. See Duprey, 895 F.2d at 309. On the contrary, Salas was merely a back-seat passenger in the van at the time it was stopped, and had only made the acquaintance of Gilgan, the owner of the van, the day of the search. Under these circumstances, Salas had no legitimate expectation of privacy in the contents of the van, and thus no standing to object to its search.
 
 
 12
 Were it not for the fact that Salas also challenges the constitutionality of the initial stop of the van, this would be the end of our inquiry. Cf. Rakas, 439 U.S. at 150-51, 99 S.Ct. at 434 (Powell, J., concurring) (petitioners did not challenge the constitutionality of the police stop of the car in which they were passengers). In this case, however, Salas argues that the stop of the van and the detention of its occupants was unsupported by probable cause or reasonable suspicion, and was thus illegal.
 
 
 13
 B. The Initial Stop of the Van.
 
 
 14
 Evidence obtained through searches and seizures in violation of the Fourth Amendment is inadmissible against the victim of the illegal search or seizure, provided, of course, that the evidence sought to be admitted is the fruit of that primary illegality. Wong Sun v. United States, 371 U.S. 471, 484-88, 83 S.Ct. 407, 415-17 (1963); see also United States v. Ingrao, 897 F.2d 860, 866 (7th Cir.1990); United States v. Boden, 854 F.2d 983, 990 (7th Cir.1988) (evidence discovered as a result of a Fourth Amendment violation must be suppressed).
 
 
 15
 The Fourth Amendment prohibits unreasonable searches and seizures. In general, the reasonableness of a search or seizure is determined by considering whether the degree of well-founded suspicion of criminal activity is sufficient to justify the degree of intrusiveness of the challenged police conduct. United States v. Lechuga, 925 F.2d 1035, 1039-40 (7th Cir.1991); United States v. Chaidez, 919 F.2d 1193, 1197-98 (7th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 209 (1991). Thus, while a full custodial arrest must be supported by probable cause, Dunaway v. New York, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258 (1979), an investigatory stop need only be supported by a reasonable suspicion that the person stopped was involved in a crime. Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1884-85 (1968). In this case, we need not determine whether the police effected an investigatory stop of the van and its occupants, or a full-blown arrest requiring probable cause, or something in between, since we conclude that the district court's ruling that the police had probable cause to stop and search the van and to detain its occupants is not clearly erroneous. See United States v. Fryer, No. 91-1398, slip op. at 8 (7th Cir. September 2, 1992); United States v. Spears, 965 F.2d 262, 269 (7th Cir.1992) (hearing en banc denied).
 
 
 16
 In determining whether police have probable cause to believe that contraband or evidence is located in a particular place, we look to the totality of the circumstances as they were known to police at the time they acted. Illinois v. Gates, 462 U.S. 213, 230-32, 103 S.Ct. 2317, 2328-29 (1983); United States v. Burrell, 963 F.2d 976, 996 (7th Cir.1992). Where police act primarily in reliance on an informant's tip, the informant's veracity on prior occasions and his basis of knowledge are relevant factors to be considered, as is the corroboration of particular details of time and place specified by the informant. Gates, 462 U.S. at 232, 243 n. 13, 103 S.Ct. at 2329, 2335 n. 13; see also Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333 (1959) (seemingly innocent activity may become suspicious in light of details provided by informant); United States v. Towns, 913 F.2d 434, 440 (7th Cir.1990) (same).
 
 
 17
 In this case, police were relying on the tip of an informant who had been known to provide reliable information. The tip was partially corroborated by Detective Iasparro of the Winnebago Metro Unit, who identified Salas by name and description, and stated that Salas was known as a drug dealer who would be capable of procuring cocaine. The van in which Salas was riding arrived on Cherry Street, an infrequently travelled dead-end street, at the time the informant said it would, driving toward the informant's residence and bearing Illinois license plates as predicted. Furthermore, as the van approached the location of the surveillance, Officer Mussey was able to determine that at least two passengers fit Salas's description. In particular, Officer Mussey noticed that the passenger in the back seat of the van had short hair, glasses, and was approximately thirty years old. Considering the totality of circumstances, the district court concluded that the police had probable cause to perform a highly intrusive stop of the van, detain its occupants, and search it for drugs. We find that the district court's account of the evidence is entirely plausible. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511 (1985).
 
 CONCLUSION
 
 18
 Finding no error in the district court's determination that Salas's Fourth Amendment rights were not violated by the initial stop of the van, and that he had no standing to object to its search, we
 
 
 19
 AFFIRM.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 At the pretrial evidentiary hearing, Officer Mussey testified that Peterson described Salas as follows: "a male Hispanic, very light skin, short dark hair, approximately 36 years of age, five eight, five nine in height, approximately 170 pounds and sometimes wears glasses."
 
 
 [2]
 At the pretrial evidentiary hearing, Officer Mussey testified that Detective Iasparro gave him the following description of Salas: "he's about forty-ish, light skin, Hispanic male, approximately five nine, 170 pounds."
 
 
 [3]
 The assertion of a property interest in the contraband seized would not have led to self-incrimination. In Simmons v. United States the Supreme Court held that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. 390 U.S. 377, 394, 88 S.Ct. 967, 976 (1968); see also United States v. Salvucci, 448 U.S. 83, 88-89, 100 S.Ct. 2547, 2551 (1980)