**UNITED STATES of America, Plaintiff,**

v.

**Rufus SIMS, et al., Defendants.**

**No. 92 CR 166.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1995.

884

See Also: 879 F.Supp. 837, 879 F.Supp. 828.

James B. Burns, Sean Martin, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Bernard B. Nathan, Jeffrey I. Gehl, Chicago, IL, for defendants.

### *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is defendant Rufus Sims's Amended Motion to Suppress. The motion questions the Fourth Amendment legality of three separate searches and/or seizures. This court has previously dealt with Fourth Amendment issues before the trial of certain of Rufus Sims's codefendants. *United States v. Sims,* 808 F.Supp. 596 (N.D.Ill.1992). The court refers to that opinion for background facts of this case and background law on the Fourth Amendment. Each of the three chal-

lenged police procedures is considered in turn.

## I. *THE BOEGER AVENUE SEARCH*

One of the challenges is to a February 7, 1989, search of a house at 2606 South Boeger Avenue, Westchester, Illinois. The court described and discussed this search in its previous opinion, *Sims,* 808 F.Supp. 596. Those defendants who challenged the Boeger Avenue search in 1992 did not have standing to do so. *Id.* at 603. Therefore the court did not reach the substance of the legality of the search. The court, however, did reach the legality of another February 7, 1989, search that raised one of the primary issues on the Boeger Avenue search. The search previously discussed was at 1615 South 16th Avenue, Maywood, Illinois. *See id.* at 606–07.

▪ The primary issue for both the 16th Avenue and Boeger Avenue searches arose from a (now admitted) falsehood in the affidavit supporting the warrants for each of the searches. As this court previously noted, under *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), a search warrant may be voided if three conditions exist: (1) a factual statement in the affidavit is false; (2) the false statement was made knowingly and intentionally; and (3) "without the false statement, the remainder of the affidavit is insufficient to establish probable cause." *United States v. McNeese,* 901 F.2d 585, 594 (7th Cir.1990). As with the 16th Avenue search, the government for the Boeger Avenue search only contests the third element of the test. The situation with which the court is now faced is similar to that in the previous motion regarding the 16th Avenue search, so those facts bear repeating. The instant facts are most easily analyzed in comparison to the 16th Avenue search.

▪ Regarding the 16th Avenue search, this court described what was left after the falsehoods were excised from the affidavit:

The CI [Confidential Informant] had known Rufus Sims for more than five years; the CI had seen Rufus Sims store firearms at the 1615 South 16th Avenue residence; the CI knew Rufus Sims was a member of the street gang known as the "Four Corner Hustlers"; Rufus Sims had taken the CI to the 1615 South 16th Avenue residence and shown him firearms including a fully loaded UZI machine gun; Rufus Sims told the CI that he kept the guns at the house to protect the house against rival gangs; and the CI knew Rufus Sims transacted narcotics out of the 1615 South 16th Avenue residence. Other information in the affidavit established that Rufus Sims had several felony convictions.

*Sims,* 808 F.Supp. at 606. The falsehood regarding the 16th Avenue address was that the CI had seen firearms at the 16th Avenue residence two days before executing the supporting affidavit, whereas in reality the CI had actually seen firearms only at 16th Avenue, and only one year (not days) earlier. *Id.* at 606. For the 16th Avenue search, the problem was time, and the court resolved the staleness issue in the government's favor. *Id.* at 606–07. With Boeger Avenue the problem is not just time, but place as well. The CI's statement that the CI *ever* saw firearms at Boeger Avenue was a lie. No doubt the government's argument regarding Boeger Avenue is relatively weaker than its argument regarding 16th Avenue. But ultimately the distinction does not undermine the Boeger Avenue warrant. The information in the affidavit included that Sims owned the Boeger Avenue residence[1] and conducted narcotics trafficking out of the residence. Given that information, probable cause to believe Sims illegally owned weapons naturally leads to probable cause to believe Sims would store illegal weapons in the Boeger residence, based upon the supporting affidavit. The falsehood regarding specific information on Boeger Avenue is a red herring; under the circumstances here, a warrant authorizing search of Sims residence would survive without any more specific information

---

1. Rufus Sims's own affidavit states his girlfriend was the title owner (Amended Affidavit of Rufis [sic] Sims ¶ 13, at 3), but Sims does not challenge the affidavit's support of the warrant on this point. In any event, even under Sims's account, he resided at Boeger Avenue at the time of the search.

connecting the weapons to the residence. *See United States v. Lamon,* 930 F.2d 1183, 1190 (7th Cir.1991); *McNeese,* 901 F.2d at 595–96. And, in any event, information that narcotics trafficking was occurring out of a residence leads to the fair inference of weapons being stored at the residence. *Cf. United States v. Ramirez,* 45 F.3d 1096, 1103 (7th Cir.1995) ("[W]eapons are tools of the narcotics trade. . . ."). Examining the totality of the circumstances, *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the court finds the search warrant was supported by probable cause despite any alleged *Franks* problem.

Defendant's motion is denied insofar as it seeks suppression of items seized from the Boeger Avenue residence on February 7, 1989.

## II. OAK PARK SEARCH

Rufus Sims also challenges the recovery by Oak Park, Illinois, police of a black pouch and its contents on November 27, 1986. Sims's Amended Affidavit states that officers searched a certain vehicle, located a black pouch, and searched the pouch. Police discovered a drivers license and telephone bill in Sims's name, as well as a notebook (or "ledger"). Oak Park police and other state and federal agents searched the notebook, and submitted it for expert examination, all without a warrant or under a valid exception to the warrant requirement, states the defendant. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The government has a number of arguments why the Oak Park incident and related subsequent police activity were legal. The court's task now is to determine whether any of the arguments go the government's way based on the briefing, such that a hearing will not be required to resolve the motion as to the Oak Park search. The court so resolves a threshold issue, abandonment, in favor of the government, as discussed below.

■ Like other aspects of Fourth Amendment law, for a defendant to contest the search of a vehicle and its contents the defendant must have a legitimate and reasonable expectation of privacy in the vehicle, *United States v. Garcia,* 897 F.2d 1413, 1417 (7th Cir.1990); *United States v. Torres,* 32 F.3d 225, 230 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 912, 130 L.Ed.2d 794 (1995), or, put differently, the defendant must have standing to challenge the search, *id.* The defendant bears the burden of proving a legitimate expectation of privacy. *Id.*

The government's first contention here is abandonment. The Seventh Circuit discussed the law of abandonment under the Fourth Amendment in *United States v. Rem,* 984 F.2d 806, 810–11 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). "Fourth Amendment protection," the court explained, "does not extend to abandoned property." *Id.* (citing *Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960)). " 'When a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property.' " *Id.* (quoting *United States v. Lee,* 916 F.2d 814, 818 (2d Cir.1990)). " 'The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is to be made by objective standards.' " *Id.* (quoting *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983)).

■ Here the government argues that the uncontested facts give rise to abandonment of the vehicle (a Chevrolet Blazer). In his reply brief defendant states, "The Defendant was asked whether he had been in the auto, and honestly replied that he had not been in the auto." [2] (Defendant's Reply to Government's Brief in Opposition to Suppression at 16.) Similarly, there is no dispute that defendant denied ownership in the vehicle. (*Id.* at 19.) Defendant's arguments focus on whether those facts lead to abandonment of

2. Later in the same brief defendant argues that the fact that defendant stated he had not been in the automobile "is not borne out by the attachments to the [government's] Brief." (Defendant's Reply to Government's Brief in Opposition to Suppression at 16.) Assuming that description of the government's brief is accurate, it is nonetheless irrelevant, since defendant concedes in his own brief that he denied being in the vehicle.

any interest in the *pouch* in the Blazer, which the court will address below. For now, the court concentrates on abandonment of the vehicle. There can be no dispute, and defendant does not truly attempt to dispute, that for Fourth Amendment purposes the vehicle was abandoned. Defendant said he did not own it and he had not been inside it. From where, one wonders, would privacy interest in the automobile come under these circumstances? Defendant has disavowed any connection to the automobile. Abandonment of the automobile for Fourth Amendment purposes occurred, based on the undisputed facts.

■ Defendant nonetheless claims that he did not abandon the pouch within the car, stating that he was never asked whether he owned the object. First, the defendant's abandonment of the car, from an objective point of view, was clearly complete. By his own account defendant stated to the Oak Park officers that he did not own the car and that he had not been inside the car. Defendant may have been thinking to himself that he still had a possessory interest in an object within the car, but such a subjective intent is irrelevant under *Rem*, 984 F.2d at 818.[3] The court's only concern is the objective assessment of the facts known to the officers, and the only objective conclusion is that defendant disavowed interest in the car completely, including its contents. Second, since defendant's theory of vehicle, but not content, abandonment is objectively unreasonable, one would expect him to affirmatively assert to the officers that while he did not own the car, and had not been in the car, he did claim ownership of the pouch. The D.C. Circuit Court of Appeals appears to have put such a burden of affirmative claim on a defendant in *United States v. Zabalaga*, 834 F.2d 1062, 1065 (D.C.Cir.1987) ("[W]hile disclaiming ownership of the vehicle at the time of his arrest, the appellant never asserted any claim to the personal goods that were stored in the car."). And, from an objective point of view, without such an affirmative clarification that one disavows interest in the car but not

in the contents, it is reasonable to conclude that interest in both the car and its contents is being disavowed. *See United States v. Hastamorir*, 881 F.2d 1551 (11th Cir.1989).

Based on the submitted briefs and the Amended Affidavit of defendant, the court concludes without a hearing that defendant abandoned any claim to assert a Fourth Amendment interest in the pouch and its contents, searched and seized during defendant's encounter with the Oak Park police and thereafter. Accordingly, insofar as it sought suppression of those items, defendant's motion is denied.

## III. THE BROADVIEW SEARCH

Finally, defendant challenges a June 10, 1988, detention at or near Broadview, Illinois, during which police transported Sims to the police station, searched him, and seized certain personal effects "including, but not limited to, two handwritten sheets of paper, which the government now calls 'ledgers,' and which actually contained some of [Sims's] private writings." (Amended Affidavit of Rufis [sic] Sims ¶ 17, at 4.) Sims alleges the papers were also forwarded to another government agency for further inspection. (*Id.* ¶ 21, at 5.) Sims alleges the search and seizure was not warranted under any Fourth Amendment justification. The government's claimed basis for recovery of the sheets is search incident to lawful arrest.

As discussed previously, the issue presently before the court is whether to hold a hearing, and the decision whether to hold a hearing depends upon whether the undisputed facts can lead to the legal conclusion that suppression is unwarranted. As to the Broadview search, the record on the submitted papers allows the court to resolve the motion in the government's favor without a hearing.

■ "Those seeking to invoke an exception to the warrant requirement bear the burden of establishing that the circumstances required dispensing with that requirement."

---

3. For the same reason, Sims's declaration in his Amended Affidavit that he had placed the pouch in the car with permission of the owner is simply irrelevant. The question is what was conveyed to the officers, and based on the facts admitted by Sims in his reply brief, he conveyed complete abandonment.

*United States v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985). The government never contests defendant's proposition that here the placing of the burden of proof is on the government. The threshold showing of a disputed material fact requiring a hearing, however, rests with defendant. *United States v. Robles,* 37 F.3d 1260, 1263 (7th Cir.1994); *see* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2(d) (2d ed. 1987).

■ The Seventh Circuit has outlined the considerations for a district court to determine whether to conduct a suppression hearing in circumstances similar to the instant circumstances:

> A district court is not required to conduct an evidentiary hearing on every motion to suppress. Rather, the court must conduct such a hearing "only if evidence on an issue of fact is necessary to the decision of the motion." *Nechy v. United States,* 665 F.2d 775, 776 (7th Cir.1981) (citing FED.R.CRIM.P. 41(e)).... Because [defendant] requested the hearing, he [bears] the burden of showing that there [are] disputed issues of material fact necessitating an evidentiary hearing. *Nechy,* 665 F.2d at 776. Furthermore, to justify a hearing, the facts presented in the motion must be "definite, specific, detailed and nonconjectural." *United States v. Hamm,* 786 F.2d 804, 807 (7th Cir.1986) (collecting cases).

*United States v. Rollins,* 862 F.2d 1282, 1291 (7th Cir.1988), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989); *see also United States v. Randle,* 966 F.2d 1209, 1212 (7th Cir.1992).

Sims's allegations regarding the Broadview search are found in his Amended Affidavit:

17. That on or about June 10, 1988, the Affiant was detained at or near Broadview, Illinois. Upon such detention, the police transported me to the police station, conducted a search of me, and certain personal effects were taken from me, including, but not limited to, two handwritten sheets of paper, which the government now calls "ledgers," and which actually contained some of my private writings.

18. That, upon information and belief, my detention on June 10, 1988, was without probable cause, and that any documents taken from me were without legal justification. I was not charged with any crime at that time.

19. The writings and personal items taken from me were taken without any valid search warrant.

20. Upon information and belief, the search of my person was taken without any legal justification, and without any legal basis, and was undertaken in violation of my rights under the 4th Amendment of the United States Constitution.

21. Upon information and belief, the Government then reviewed my private papers, and sent them to another government agency for further search and analysis.

22. That the papers seized from me were not returned to me following my processing, although I was not charged with any crime(s).

23. Upon information and belief, the papers were seized and evaluated in a manner which is not dictated by the Broadview Police, in their inventory procedures, and cannot be justified as an inventory search.

24. Upon information and belief, the search of my person cannot be justified as a search incident to arrest, because, if it was an arrest, said arrest was not justified under the law, and was not supported by probable cause.

25. That the papers taken from me had no apparent evidentiary or value, were not contraband, and were therefore not seized from me, upon information and belief, upon the "plaint view" doctrine.

26. That said papers were not returned to me, in further violation of my rights, and in violation, upon information and belief, of the procedures of the Broadview Police Department.

27. That said papers were not the obtained, upon information and belief, upon any exception to the warrant requirement, were further kept from me and analyzed, without any legal basis by the Government, and in violation of my 4th Amendment Rights under the United States Constitution.

28. At no time did I consent to the search of my person, or the search of my belongings or papers.

Paragraph 17 outlines the situation, but provides no facts suggesting illegality; there is no "prima facie showing of illegality." *Randle*, 966 F.2d at 1212. Paragraphs 18, 20, 25, 26 and 27's allegation of illegality fails the test of being "definite, specific, detailed and nonconjectural." *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986). Paragraphs 19, 21–24, and 28 do not independently establish illegality. Sims's affidavit is reminiscent of that in *United States v. Randle*. As in *Randle*, there are allegations "noticeably absent." *Randle*, 966 F.2d at 1212. Sims never attacked the underpinning of probable cause. That said, given the failure of defendant to meet its burden to force a hearing, defendant's motion attacking the Broadview arrest could likely have been denied even without reference to the government's response.

When the government's response is considered, it is even more clear no hearing is required. Under the government's version of the facts, probable cause existed. The court's only reservation here was that the government's version was not verified. It is not clear what import that had, given defendant's failure to either present specific facts of his own or contradict the government's facts. There would certainly be no *harm* in the government verifying its version, so the court ordered such a verification.[4]

 Looking to the totality of the circumstances, *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), uncontested facts support a finding that the officers executing the Broadview arrest had probable cause to believe that defendant had committed—at the very least—illegal structuring of a financial transaction. Among the suspicious circumstances were that Sims and his brother walked up to a bank teller with a gym bag full of cash. They used this cash to purchase two separate cashier's checks for $8,000 to the same person. The gentlemen also were young, and not usual customers of the bank. The officers knew these facts, and under an objective analysis, *see, e.g., United States v. McCarty*, 862 F.2d 143, 148 (7th Cir.1988), those factors ground probable cause for the arrest. Defendant has no further objection to the police conduct that does not spring from the allegation of illegal arrest. Accordingly, regarding the Broadview search, defendant's motion is denied.

## CONCLUSION

Defendant Rufus Sims's Amended Motion to Suppress Evidence is denied.

---

4. Defendant objected to the verification based on form and specificity. Said objections are overruled. Worth noting is that defendant still does not take issue with one single detail of the government's (now substantially verified) factual position.