PER CURIAM.
Appellant/defendant, Hopia Bryan, appeals the denial of his motion to suppress. We reverse.
On October 2, 1998, several police officers set up a surveillance at a particular residence in order to arrest Antonio God-frey. They did not have a warrant. After an hour, Sergeant Fisten radioed the other officers that he had spotted Godfrey in the front yard of a private residence. He approached this individual with his gun drawn and ordered him to freeze. At the time of the stop, it was dark. Other uniformed officers also approached the suspect with their guns drawn. According to Sergeant Fisten, this individual immediately pulled his hand out of his pants pocket and threw a brown paper bag onto the ground. He was then ordered to lie down on the ground and was handcuffed.
As fate would have it, the individual was Hopia Bryan, not Antonio Godfrey. Sergeant Fisten realized the mistaken identity as Bryan was being ordered to the ground and handcuffed. Despite this realization, Bryan was nevertheless confined and a search of the brown paper bag was conducted. The brown paper bag was found to contain marijuana and Bryan was arrested for its possession. Bryan 'filed a motion to suppress the evidence recovered during the search of the bag. The trial court found that Bryan had abandoned the paper bag, thereby relinquishing any right to contest its search, and denied the mor tion. We find that this was error.
Under the circumstances of this case, when a group of armed police officers approach an individual, we find that .it is perfectly reasonable for the person so approached to throw down a paper bag the person is carrying, lest it be confused with some kind of weapon that could conceivably endanger the officers and thus provoke a dangerous reaction by the police. When property is discarded by an individual approached in this manner, it is not “abandoned” as that term is used in search and seizure law.
Our holding is supported by several factually similar Florida decisions. In Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993), law enforcement was conducting a surveillance of á residence in an attempt to identify a suspect known only as “T.” When Harrison arrived at the residence, an'officer walked over to him and inquired, “T?”, to which Harrison responded by saying, “Yeah.” The officer identified himself and told Harrison to take his hand out of his pocket. When Harrison complied, a substance containing cocaine fell from his person. On appeal from a denial of Harrison’s motion to suppress the evidence obtained as a result of the .encounter, the court analyzed the suppression issue as dependent upon whether the initial consensual encounter between the officer and Harrison evolved into a seizure before Harrison dropped the cocaine. The court held that a seizure did occur prior to Harrison’s discard of the cocaine as contemplated under Hollinger v. State, 620 So.2d 1242 (Fla.1993) and State v. Anderson, 591 So.2d 611, 613 (Fla.1992) (holding that “[an] abandonment which is the product of an illegal stop is involuntary, and the abandoned property must be suppressed”), and therefore the evidence obtained as a result of the illegal seizure should have been suppressed.
*248 In Hollinger, the defendant dropped cocaine as a group of officers in black masks and SWAT-team-type regalia approached him and his companions in a parking lot during a drug sweep and announced that they were from the “Orange County Sheriffs Office.” The trial court suppressed the cocaine, ruling that the dropping of the cocaine under those circumstances was involuntary.[1] In Popple v. State, 626 So.2d 185 (Fla.1993), a case involving a suspect in a parked automobile, the Florida Supreme Court discussed the applicable standard for determining whether an encounter turns into a seizure when an officer requests an individual to do a particular act. The court stated,
Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries, and the person may. not be detained without a well-founded and articulable suspicion of criminal activity. This Court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Whether characterized as a request or an order, we conclude that Deputy Wilmoth’s direction for Popple to exit his vehicle constituted a show of authority which restrained Pop-ple’s freedom of movement because a reasonable person under the circumstances would believe that he should comply.
Id. at 187-88 (citations omitted). We can conceive of few situations where a person is more hindered or restricted in his movement than when he is ordered to freeze and then handcuffed on the ground as Bryan was in this case. Clearly, he was seized when he threw down the bag.
The State argues that Bryan’s throwing down the bag was voluntary abandonment because the officer here merely ordered Bryan to freeze and did not specifically order Bryan to take his hand out of his pocket, and,, therefore, the above-cited cases are distinguishable. We do not view that as a significant difference because we believe it is eminently reasonable for a law-abiding citizen to remove his hand out of his pocket when confronted with a group of gun-toting police officers shouting orders, even if those orders do not explicitly include an order to remove one’s hand from his pocket. See, e.g., McNeil v. State, 746 So.2d 547, 548 (Fla. 5th DCA 1999) (only a pat-down, not a complete search of defendant’s person justified where defendant put his hand in his pocket although directed by the officer to keep his hands out of his pockets).
Because we find that the evidence against Bryan was obtained, not through a voluntary abandonment, but rather as the result of an illegal seizure by the police, we reverse and remand with directions to grant Bryan’s motion to suppress.
Reversed and remanded.

. The Harrison court lists other cases consistently holding that orders, or even requests, to remove a hand from a pocket causes a consensual encounter to become a seizure. See, e.g., Johnson v. State, 610 So.2d 581, 583 (Fla. 1st DCA 1992) (seizure where officer told appellant to remove his hands from his pockets and to turn around so that the officer could get a good look at him); Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990) (seizure where the suspect was asked to step out of a parked vehicle and after she got out was asked several times to remove her hand from her pocket); Canion v. State, 550 So.2d 562 (Fla. 4th DCA 1989) (“What began as a 'mere encounter' between the deputy sheriff and the appellant escalated to a temporary detention when the deputy demanded that appellant remove his hand from his pocket.”); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989) (seizure where appellant, while sitting on a park bench at 4:00 A.M., was asked to take his hands out of his pockets for the officer’s safety).