**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bruce DILLARD, Defendant–Appellant.**

No. 01–3743.

United States Court of Appeals,
Sixth Circuit.

Oct. 20, 2003.

Gary D. Arbeznik, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Edward J. Sebold, Mark A. Whitt, Brad A. Sobolewski, Jones Day, Cleveland, OH, for Defendant–Appellant.

Before CLAY and GIBBONS, Circuit Judges, and CLELAND, District Judge.*

CLELAND, District Judge.

Bruce Dillard was convicted of two counts of distributing cocaine base; possessing with the intent to distribute cocaine base; using, carrying, and brand-

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

ishing a firearm in relation to a drug-trafficking crime; and being a convicted felon in possession of a firearm. He challenges his conviction on several grounds, arguing that (1) evidence of ninety-nine grams of cocaine base found in his briefcase should have been suppressed because its seizure violated his Fourth Amendment rights, (2) the jury should have been instructed on the lesser included offense of simple possession, (3) his trial counsel was ineffective for failing to present evidence supporting the lesser included offense of simple possession, and (4) the weapons conviction should be reversed if the underlying drug conviction is reversed. For the following reasons, Dillard's conviction is affirmed.

## I.  FACTUAL BACKGROUND

In May 1999, police officers began investigating a two-story apartment house located at 7433 Clemont Avenue, Cleveland, Ohio, as a result of complaints about drug activity at that address. Using an informant, the officers made two controlled buys of cocaine base (crack) from Dillard. The first, on May 6, 1999, occurred at that address, and the second, on May 12, occurred just after Dillard left that address. Each time, Dillard sold the officer an amount of crack worth sixty dollars.

On May 26, 1999, the police obtained a search warrant for the upper residence at 7433 Clemont. The police were also aware that there was a felony warrant on an unrelated matter for Dillard's arrest at that time. Seven officers approached the side door of the apartment in a single file line, and three other officers were stationed around the house for security. As the police approached the premises, they observed Dillard and another male, Steven Piskach, exiting the residence from the side door. Dillard was carrying a briefcase. Sergeant Thomas Acklin announced

"Police, search warrant," or "Police, put your hands up," or words to that effect. At that time, Dillard and Piskach were outside the house, in the driveway.

Dillard then tossed the briefcase onto the ground. He had been holding it in his right hand and threw it to the left. According to the testimony of detectives James Kennelly and Bienvenido Santiago, the briefcase "went flying" and landed about four feet away. Dillard began to struggle with the officers and, with his right hand, he pulled a loaded 9mm gun (later determined to contain ten rounds of ammunition) from his waistband. In an altercation lasting forty-five seconds to a minute, the officers moved Dillard onto the ground and removed the loaded gun from his hands.

Dillard was placed under arrest. The police opened Dillard's briefcase and discovered 99.21 grams (or about 3.5 ounces) of crack, an inoperable weapon, assorted drug paraphernalia, and plastic bags used for packaging cocaine. Sergeant Acklin, qualified as an expert in narcotics enforcement, estimated that the street value of the crack recovered from Dillard's briefcase could be $3,000 to $4,000 if sold in ounces or "almost $10,000 worth" if sold in $20 "rocks."

## II.  PROCEDURAL HISTORY

On June 30, 1999, a federal grand jury indicted Dillard on three counts: (1) possession with intent to distribute approximately 3.5 ounces of cocaine base, in violation of 21 U.S.C. § 841; (2) using, carrying, and brandishing a firearm in relation to drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Dillard moved to suppress the evidence found in the briefcase, and the district court held an evidentiary hearing on November 18, 1999. The district court denied Dillard's motion to suppress, finding that the search of the briefcase was incident to a lawful arrest and that the contents of the briefcase would have been inevitably discovered through an inventory search. The court also noted that "certainly there is more evidence than not" that Dillard discarded the briefcase, but at that time declined to address whether Dillard lacked standing to challenge the admission of the evidence because he had abandoned the briefcase.

The government filed an Amended Notice of Enhancement on December 22, 1999, which enhanced the statutory minimum for Count One from ten years to life without parole based on Dillard's prior convictions. On February 18, 2000, Dillard filed a renewed motion to suppress the evidence seized from the briefcase, but it was denied for the same reasons as the original motion. At the conclusion of Dillard's trial, on March 3, 2000, the jury returned guilty verdicts on all counts. On May 4, 2000, however, the district court declared a mistrial. The reason for the mistrial was the accidental inclusion of a search warrant affidavit in the exhibits provided to the jury.

On May 30, 2000, Dillard was named in a five-count superseding indictment charging him with the same three counts, plus two counts of distributing cocaine base in violation of 21 U.S.C. § 841. On September 8, 2000, Dillard filed a renewed motion to suppress the evidence found in his briefcase, and the district court denied the motion because it found that Dillard had abandoned the briefcase when he discarded it, such that he lacked standing to raise a Fourth Amendment challenge. Alternatively, the district court ruled that the search of the briefcase was incident to a lawful arrest, or that the contents of the briefcase would have been inevitably discovered during a routine inventory search.

On September 19, 2000, the government filed a Second Amended Notice of Enhancement that enhanced the statutory minimum for Count Three from ten years to life without parole. On November 15, 2000, Dillard filed another motion to suppress the briefcase evidence, but the motion was orally withdrawn two days later at a pretrial conference. The second jury trial commenced on November 27, 2000. It also resulted in a mistrial when, after the first day of trial, the police found a razor blade in the briefcase that had not been previously discovered.

The third and final jury trial commenced on February 26, 2001. On March 1, 2001, the jury returned guilty verdicts on all five counts charged in the superseding indictment. Dillard was sentenced to life without parole for the conviction under Count Three and to a consecutive seven year term for the conviction under Count Four. Dillard filed a timely appeal.

## III. STANDARD OF REVIEW

A district court's factual findings made in considering a motion to suppress evidence will be upheld unless they are clearly erroneous, and its legal conclusions are subject to *de novo* review. *United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir. 1992).

Where, as here, a defendant fails to request or object to a jury instruction, we review only for plain error. Fed. R.Crim.P. 30; *United States v. Pearce,* 912 F.2d 159, 163 (6th Cir.1990). An error is "plain" if it is "clear under current law" and "affected the outcome of the district court proceedings." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123

L.Ed.2d 508 (1993). Our authority to correct a plain error is discretionary and should be employed only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (internal quotations and citations omitted).

## IV. DISCUSSION

### A. Admission of Briefcase Evidence

Dillard challenges the admission of the evidence found in the briefcase, arguing that the search of the briefcase violated his Fourth Amendment rights. The government argues that Dillard lacks standing to raise this claim, because Dillard abandoned the briefcase by throwing it on the ground. A defendant charged with a crime of possession may claim the benefits of the exclusionary rule only if his Fourth Amendment rights have in fact been violated, *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and search and seizure of abandoned property does not violate the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Thus, the first question for review is whether Dillard abandoned the briefcase.

The term "abandonment," in this context, does not refer to traditional concepts of property law. *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir.1982). Rather, the capacity to claim the protection of the Fourth Amendment depends "upon whether the person who claims the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The Supreme Court has noted that the concept of a "legitimate expectation of privacy" incorporates two elements: (1) whether an individual's conduct has exhibited such an expectation, and (2) whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable under the circumstances. *Id.* The defendant bears the burden of demonstrating standing by showing that he had a legitimate expectation of privacy in the searched item. *See Rakas*, 439 U.S. at 130 n. 1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.").

For the reasons set forth below, we affirm the district court's ruling that Dillard abandoned the briefcase. The question of abandonment is a mixed question of law and fact, and the district's court's resolution of any factual issue is entitled to great deference. *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir.1986). The district court's findings were as follows:

> I'm going to deny the defendant's motion to suppress. I'm going to specifically find-denying it for several grounds. First, I do not believe the defendant has standing to object because the evidence showed that the defendant had abandoned that briefcase by throwing it away prior to his being apprehended. That's the evidence I found, and I made those findings last November [18, 1999, after an evidentiary hearing], and I believe they were correct.

(09/13/00 Tr. at 3–4.) At the earlier evidentiary hearing, the district court had stated that "there is more evidence than not that [Dillard] discarded that briefcase," (11/18/99 Tr. at 154) and "the evidence is that Mr. Dillard flung [the briefcase] away when he saw the officer." (*Id.* at 155.) Further, although "you are not likely going to fool anyone by throwing a briefcase away in the presence of five or six officers, people often do something quickly out of instinct without doing a lot of thinking." (*Id.*)

Abandonment is primarily a question of intent, and intent my be inferred from words, acts, and other objective facts. *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973). When a person has disclaimed ownership of a discarded item or container, courts have repeatedly held that the person has no legitimate expectation of privacy in the item or container and has thus abandoned it. *United States v. Torres,* 949 F.2d 606 (2d Cir.1991); *United States v. Frazier,* 936 F.2d 262 (6th Cir. 1991); *United States v. Knox,* 839 F.2d 285 (6th Cir.1988); *United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982). By contrast, defendants who assert an interest in the item are held not to have abandoned the item. *Smith v. Ohio,* 494 U.S. 541, 543–44, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) ("[A] citizen who attempts to protect his private property from inspection, after throwing it on a car to respond to police officer's inquiry, clearly has not abandoned that property."); *United States v. Sanders,* 719 F.2d 882, 886 (6th Cir.1983) (where defendant consistently refused to consent to search of the suitcase, she did not abandon it). In this case, Dillard neither verbally disclaimed ownership of the briefcase, nor did he make any attempt to protect it from search and seizure. The question of abandonment, then, must be decided based on Dillard's actions and on the circumstances surrounding the alleged abandonment.

One of the most crucial facts of an abandonment case is the location of the object in question. Dillard cites *Commonwealth v. Straw,* 422 Mass. 756, 665 N.E.2d 80 (1996), where the defendant had tossed a briefcase from the window of his house into his fenced backyard as police approached the house with an arrest warrant. The court held that Straw had not abandoned the briefcase, but rather had "intended to protect his property from any public scrutiny because he placed the property in a closed and locked briefcase and disposed of the briefcase by throwing it into the fenced-in curtilage of his family's home, an area enjoying full Fourth Amendment protection from search by the authorities." *Id.* at 83.

In contrast, when a teenager, immediately prior to an encounter with police, threw a paper bag to the ground on a public street, it was found that he "no longer had any reasonable expectation of privacy in the property which he discarded because he divested himself of all possession therein by dropping it in a place where the public had complete access." *State v. Oliver,* 368 So.2d 1331, 1336 (Fla. Dist.Ct.App.1979). Likewise, when police approached two women exiting a bank, and one of them dropped an envelope to the ground in the parking lot, the police were justified in recovering and examining the contents of the envelope. *United States v. Sims,* 808 F.Supp. 596, 604 n. 14 (N.D.Ill. 1992) ("By dropping the envelope, defendants effectively abandoned the envelope and its contents (a safe deposit key) and thus have no legitimate expectation of privacy in these items.").

Again, this case falls into the middle ground. Dillard threw the briefcase to the ground near the side door of a house he had been visiting. The location was not as open as a public street or parking lot, but neither was it entirely private. In this respect, the instant case resembles *United States v. Morgan,* 936 F.2d 1561 (10th Cir.1991). The defendant in *Morgan* fled from police to the house of an acquaintance, attempting to enter through the back door. Unable to gain entry into the house, the defendant "threw the tan bag he was carrying to the south side of the porch and headed back down the porch stairs in the direction of [the police]." *Id.* at 1565. The Tenth Circuit found that Morgan had "abandoned the gym bag and

any privacy interests he had in it." *Id.* at 1570. "The fact that Mr. Morgan was in the backyard of someone he knew or was acquainted with, at the time he threw the bag, is of little significance. The record reveals we do not have before us a case where the item was left to the care or responsibility of another, or where there is a delayed indication of an intent to retain an expectation of privacy in the item." *Id.* Dillard, like Morgan (but unlike *Straw*, above), was not attempting to secrete the container in a place where he had an expectation of privacy, but rather discarded the item in his attempt to avoid arrest.

Indeed, Dillard's resistance to police merits further discussion. Contrary to Dillard's argument, this case does not resemble *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) or *Bryan v. State*, 760 So.2d 246 (Fla.App. 2000). In those cases, the defendants dropped or discarded items in compliance with police instructions. In *Smith*, after the police identified themselves, the defendant tossed the bag he was carrying onto the hood of his car and turned to interact with the police, who had asked him to "come here a minute." 494 U.S. at 542. As mentioned above, the defendant then attempted to protect his bag from a police search. In *Bryan*, the defendant dropped a bag when police ordered him to freeze. He then followed police orders to lie down

on the ground and was handcuffed. 760 So.2d at 247.

There are obvious reasons for courts to give the benefit of the doubt to defendants who drop items while complying with police instruction. There would be a serious potential for abuse if police could compel an arrestee to "abandon" property on his person, which would then be fair game for a warrantless search. However, when a person discards an item as part of an attempt to resist arrest, courts have repeatedly found that the person abandoned the item.

In one such case, we held that a defendant's heaving a shoulder bag over a fence while the police pursued him constituted abandonment. *United States v. Collis*, 766 F.2d 219, 222 (6th Cir.1985). We stated, "In our view, the defendant abandoned the shoulder bag and failed to establish a legitimate subjective expectation of privacy which would confer standing to raise a fourth amendment challenge to the agent's search of the bag." *Id.* Although Dillard dropped the item and grabbed his gun, rather than dropping it and fleeing, as the defendant in *Collis* did, *Collis* is sufficiently similar to Dillard's case to warrant the same result. Likewise, in *Morgan*, the defendant was found to have abandoned his bag when he discarded it and moved toward the police, rather than fleeing.[1]

1. Our colleague in dissent finds no abandonment in this case by attempting to distinguish the myriad of cases holding that a defendant disclaims ownership in the relevant property by tossing or dropping it in order to flee from the police. According to the dissent, this case requires a different outcome because Dillard did not move away from the officers or attempt to elude the officers, but rather attacked the officers with a handgun pulled from his waistband. We cannot agree. Whether a suspect drops a cumbersome item to assist in his escape or drops the item to attack the officers, such actions evince an intent to leave the item behind, i.e., to aban-

don it. *See Morgan*, 936 F.2d at 1570 (finding abandonment when the defendant threw the bag and moved toward the officer before being apprehended). In any event, even if Dillard had a subjective expectation of privacy in the discarded briefcase, society would not recognize such an expectation as reasonable under the circumstances (i.e., where the suspect throws a bag so as to place himself in a better position to attack police officers). *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir.2003) (court must determine whether society is "prepared to recognize [the defendant's] expectation as legitimate").

Another line of relevant cases deals with defendants who, immediately prior to a police encounter, throw away items containing incriminating evidence. One such case is *United States v. Park*, 142 F.3d 437 (Table), 1998 WL 69028 (6th Cir.1998), in which the defendant leaned out the door of his mobile home and dropped a thermos on the ground as police approached. The thermos contained methamphetamine, and Park moved to suppress the evidence. However, the district court denied his motion, and we affirmed, stating, "the deputies observed Park in the act of throwing the thermos away. There is no reasonable expectation of privacy in an object after it has been thrown away, and the Fourth Amendment offers no bar to its seizure." *Id.* at *1. We cited *United States v. Jabara*, 618 F.2d 1319, 1324–25 (9th Cir.1980) (seizure of "shopping bag containing over ten pounds of cocaine and heroin, which had been dropped out the window of the [defendant's] residence, was justified on the theory of abandonment") (*overruled on other grounds by United States v. De-Bright*, 730 F.2d 1255, 1259 (9th Cir.1984)) and *United States v. Arboleda*, 633 F.2d 985, 991–92 (2d Cir.1980) (seizure of package of cocaine defendant tossed onto ledge outside window of his apartment upheld on abandonment grounds). Like the defendant in *Park*, Dillard threw the item on the ground when he realized the police were approaching. The district court found that Dillard's conduct did not exhibit an expectation of privacy in the briefcase, and Dillard failed to show that this finding was clearly erroneous. Therefore, the Court affirms the denial of Dillard's motion to suppress.

Moreover, the district court had two alternate grounds for admitting the evidence found in the briefcase. First, it held that, even if Dillard did not throw away or abandon his briefcase, "a search of the briefcase was proper as a proper search incident to a lawful arrest ... [I]t would be appropriate and prudent to search the person of the defendant and the area within his immediate control and various things in his control." (09/13/00 Tr. at 4.) We find no error in this holding. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (pursuant to a lawful arrest, police may search any evidence on the arrestee's person as well as the area into which an arrestee might reach in order to grab a weapon or evidentiary item).

Dillard argues that *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), prohibits any warrantless search of personal property which has been seized from an arrestee and subsequently reduced to the exclusive control of the police.

> [W]arrantless Searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest" ... or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.* at 15 (citation omitted). Dillard asserts that, because he had been handcuffed and could not reasonably have reached the briefcase, no exigency existed, and that the police had reduced the briefcase to their exclusive control.

Exigency is defined as "[a] situation demanding swift attention or action." *American Heritage Dictionary* 247 (1988). Even after an arrest scene has been made

relatively secure, the situation often remains pressing and urgent. Indeed, even the *Chadwick* Court recognized "[t]he potential dangers lurking in all custodial arrests." 433 U.S. at 14–15. The mere fact that an arrestee has been subdued and handcuffed in no way signals the end of exigent circumstances, and cannot preclude a search of the arrestee's person and surrounding area.

We have recently distinguished *Chadwick* and *United States v. Calandrella,* 605 F.2d 236 (6th Cir.1979), in which the searches occurred at a police station, from cases in which the search was conducted at the scene of the arrest. *United States v. Blevins,* 234 F.3d 1270 (Table), 2000 WL 1597821, *1 (6th Cir.2000). Dillard admits that the search made by the officers in *Blevins* occurred under exigent circumstances, even though Blevins was handcuffed and lying on the ground. *Id.* at *2. In *Blevins,* we noted that "[f]ederal courts have consistently recognized that arresting officers are privileged to search a suspect's baggage at the same time of the arrest even though the danger to the officers or the risk of evidence destruction has passed." *Id.* at *3. We then cited numerous cases upholding searches performed after police had handcuffed the suspect. *See United States v. Mitchell,* 64 F.3d 1105, 1110–11 (7th Cir.1995), *cert. denied* 517 U.S. 1158, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996) ("We do not believe that Johnson's handcuffing destroyed Lewellen's justification for searching the briefcase."): *see also United States v. Nohara,* 3 F.3d 1239 (9th Cir.1993); *United States v. Fleming,* 677 F.2d 602 (7th Cir.1982).

■ When the police approached Dillard to arrest him, he was carrying a briefcase, which he then discarded. After police arrested and subdued a violently struggling Dillard, they then searched the briefcase he had originally been carrying.

This action epitomizes the doctrine of search incident to arrest. "[W]hen a container is within the immediate control of a subject at the beginning of an encounter with law enforcement officers; and when the officers search the container at the scene of the arrest; the Fourth Amendment does not prohibit a reasonable delay, such as the one in this case, between the elimination of the danger and the search." *United States v. Han,* 74 F.3d 537, 543 (4th Cir.), *cert denied* 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996). The district court had ample grounds for its conclusion that the search of Dillard's briefcase was incident to a lawful arrest, and we affirm its ruling.

■ The district court had a second alternate ground for admitting the evidence found in Dillard's briefcase: "[T]he contents of that briefcase would have been inevitably discovered, because even if for some reason the briefcase hadn't been searched at the time of the arrest … [it] would have been searched as an inventory search at some point after the arrest." (09/13/00 Tr. at 4.)

Dillard argues that the search of the briefcase was not a lawful inventory search. Even if this were correct, it is irrelevant. The inevitable discovery doctrine examines what would have transpired if the warrantless search had not taken place, rather than what actually occurred. *See United States v. Kennedy,* 61 F.3d 494, 500 (6th Cir.1995). In *Kennedy,* an airline employee, pursuant to an established policy, opened one of two misrouted suitcases searching for identification. *Id.* at 496. When she found $176,000, the employee notified the police. *Id.* At the employee's request, the police assisted her in breaking open the second suitcase, which turned out to contain 17 kilograms of cocaine. *Id.*

In *Kennedy,* we found that the police's actions constituted an illegal search. Nev-

ertheless, we found no error in admitting the evidence under the inevitable discovery rule, as follows:

> The police misconduct in this case was the warrantless search of the black suitcase, thus the Court must consider what would have happened had the illegal search not occurred. Had the police acted lawfully, once the bag was seized and it was determined that it posed no danger of exploding, they would have sought a search warrant. The government concedes that under the facts of this case, it is unlikely that a search warrant would have been issued ... If the police had been unable to secure a warrant, they would have been required to return the suitcase to Northwest Airlines unopened. Northwest would then have opened the suitcase, pursuant to its lost luggage policy, in an effort to locate its owner.

*Id.* at 500. Thus, even if police had refrained from an illegal search, the cocaine would have been discovered and turned over to the police by the private airline, which had no Fourth Amendment restrictions. *Id.*

In Dillard's case, the police removed items from the briefcase and entered them onto the inventory sheet. If Dillard did not abandon the briefcase, it was still in his possession, and examining items removed from the arrestee's person or possession and listing them is "an entirely reasonable administrative procedure." *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (upholding search of arrestee's shoulder bag). As Dillard points out, this did not constitute a true inventory search, because only certain items were listed. Indeed, after discovering that the briefcase contained drugs, the police appear to have simply included it in the search of the property for which they had originally received the search warrant.

The question, however, is not whether police performed a legitimate inventory search after breaking open the briefcase. The question is instead whether police would have eventually performed an inventory search had they refrained from breaking open the briefcase at the scene of the arrest. There is no evidence in the record on this point. In all likelihood, if the briefcase had remained locked, it would have been transported to the police station with Dillard, whereupon it would have been subject to an inventory search as part of Dillard's booking process. The inevitability of such a search is a question of fact, and we defer to the finding of the district court, which held that such discovery would have been inevitable.

## B. Lesser Included Offense

Dillard's second claim is that the district court erred by refusing to instruct the jury on the lesser included offense of simple possession. He concedes that the Court should review this claim only for plain error, because his trial counsel admitted that there was insufficient evidence to instruct the jury on the lesser included offense. A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater. *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Such an instruction should not be given unless "the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense ..." *United States v. King,* 567 F.2d 785, 790 (8th Cir.1977). In this case, Sergeant Acklin testified that the street value of the crack seized was $3,000 to $10,000. He also testified that the amount was more

consistent with distribution than with personal use. Although Dillard offered expert testimony in his first trial that ninety-nine grams of crack is consistent with personal use and could supply a heavy user for approximately three to four days, he failed to offer any similar evidence in his third and final trial.

■ Dillard maintains that Sergeant Acklin's testimony was sufficient to warrant the lesser included instruction. Sergeant Acklin, however, merely conceded the unremarkable point that a user of drugs could purchase a large quantity of drugs at one time. Considering the amount of drugs seized, the evidence that Dillard had plastic bags of the type often used to distribute crack, the evidence that Dillard actually distributed crack in two controlled buys shortly before he was arrested, and, most importantly, the lack of evidence that Dillard possessed crack for personal use, a rational jury could not have found that Dillard was a mere user, rather than a seller of drugs. Accordingly, it was not plain error for the district court not to instruct the jury on the lesser included offense of simple possession.

### C.  Ineffective Assistance of Counsel

Dillard's third contention is that his trial counsel was ineffective for failing to present evidence to support the lesser included offense of simple possession and for failing to request the instruction. This claim was not raised below. As the government points out, we "generally will not review an ineffective assistance of counsel claim that is raised for the first time on appeal." *United States v. Straughter,* 950 F.2d 1223, 1234 (6th Cir.1991); *United States v. Swidan,* 888 F.2d 1076, 1081 (6th Cir.1989) ("This court will not review an ineffective assistance of counsel claim raised for the first time on appeal."). This rule is necessary because the record of the trial court's

proceeding is normally insufficient for purposes of evaluating counsel's performance. *Id.* Therefore, such claims "are best brought by a defendant in a post conviction proceeding under 28 U.S.C. § 2255," where the parties "can develop an adequate record on the issue." *United States v. Daniel,* 956 F.2d 540, 543 (6th Cir.1992). When the record is adequate to assess the merits of an ineffective assistance of counsel claim, however, the claim may be considered, even if it was never presented to the district court. *Straughter,* 950 F.2d at 1234; *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990). The record before the Court in the instant appeal is sufficient to address the merits of Dillard's claim.

In order to demonstrate ineffective assistance of counsel, a defendant must affirmatively prove two elements. First, the defendant must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In other words, the lawyer must have committed unreasonable acts that "were outside the range of professionally competent assistance." *Id.* at 690. Second, the defendant must show that the deficient performance prejudiced his defense. *Id.* at 687. This require showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless a defendant makes both showings, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable.

We hold that Dillard's Sixth Amendment rights were not violated. Dillard argues that his trial counsel should have called an expert witness who would testify about whether the amount of crack in his briefcase was consistent with personal use. In Dillard's first trial, his earlier counsel had called Margaret DeArmond, a certified chemical dependency counselor who testified that a person in fairly good health who has been using crack for ten years or more could "easily" ingest an ounce of crack per day. Dillard contends that his later counsel should have called DeArmond again or called another witness who could testify about the habits of persons addicted to crack. "The jury instead heard only from the Government's witness, who can hardly be considered neutral and dispassionate on the issue of whether the crack attributed to Dillard was for personal use or for distribution." (Appellant's Br. at 44.)

■ As noted, there is nothing in the record to indicate why Dillard's trial counsel chose not to call DeArmond or a witness who could offer similar testimony. However, we hold that trial counsel's decision not to proceed with a "personal use" defense was the sort of trial strategy that may not be second-guessed by a reviewing court. As the Supreme Court explained, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy." *Id.* (internal quotation omitted).

On the present record, Dillard cannot overcome the presumption that his trial counsel rendered adequate assistance. At the third trial, unlike the first trial, Dillard was charged with two counts of distributing cocaine base. Therefore, the "personal use" defense was more viable at the first trial, and it was not "outside the wide range of reasonable professional assistance" for the defense counsel to abandon it in favor of other defense theories at the third trial.

Dillard argues that his counsel did in fact pursue a "personal use" defense, but that the defense was pursued incompetently. Indeed, defense counsel appeared to cross-examine government witnesses in such a way as to attempt to establish the plausibility of a "personal use" defense, and the lesser-included instruction was proposed in the original jury instructions. Defense counsel requested and received a continuance to present a witness who could establish that Dillard was a drug user. This witness, Janice Parks, was not subpoenaed and failed to appear on the final day of the trial. Prior to giving jury instructions, the court discussed the missing witness at length with counsel for both parties, and Dillard's counsel gave some insight into the motivations behind his trial strategy:

> She was not subpoenaed, and I think it was originally a witness that Mr. Dillard did not want to use in this case, but as a result of, I guess, how the case was developed and was tried, you know, when I asked him well, you know, I don't think the other people that was used in the first trial and we would rely on in the second trial would have really been advantageous to his position in this

case. I asked if there was anyone else and he gave me the name Janice Parks. (02/28/01 Trial Tr., at 448–49.) It appears, then, that Dillard's counsel made a calculated decision not to call witnesses who, in the first trial, supported the theory of simple possession. This decision was apparently based on "how the case was developed and tried." *Id.* Thus, it is plausible that Dillard's counsel was unsatisfied with the results of his cross-examination of government witnesses, uncertain as to the usefulness of witnesses such as DeArmond in light of the superseding indictment, and unhopeful as to the ultimate success of the simple possession argument. Following a failed last-minute attempt to call a witness whom Dillard's counsel had never met, and whose testimony may or may not have been helpful to Dillard's case (02/27/01 Trial Tr., at 437–438), it was well within the range of professional representation for Dillard's counsel to acquiesce in the striking of the simple possession instruction and to abandon the "personal use" defense to focus on other issues.

### D. Underlying Offense

Dillard's final argument is that the conviction under Count Four of the superseding indictment—carrying a weapon in relation to a drug trafficking indictment in violation of 18 U.S.C. § 924(c)—must be reversed if the underlying drug trafficking conviction under Count Three—possession with intent to distribute approximately 3.5 ounces of cocaine base in violation of 21 U.S.C. § 841—is reversed. He cites no authority for this proposition, and there is some authority to the contrary. *See United States v. Hill,* 971 F.2d 1461, 1464 (10th Cir.1992) ("While proof of the underlying crime is necessary to convict under § 924(c), a defendant need not be convicted of the underlying crime in order to be convicted of § 924(c)."); *United States v. Wilkins,* 911 F.2d 337, 338 n. 1 (9th Cir.

1990) ("A defendant need not be separately charged or convicted of the underlying offense to be convicted under [§ 924(c)]."). In any event, Dillard has provided us with no basis to reverse the underlying conviction. Therefore, we need not address his final argument.

### V. CONCLUSION

For the reasons articulated above, Dillard's conviction on all counts is AFFIRMED.

CLAY, Circuit Judge, dissenting.

The majority opinion has rejected Dillard's Fourth Amendment challenge, reasoning that Dillard abandoned his briefcase, and that in any event the police officers' actions fell under exceptions to the Fourth Amendment warrant requirement. Because neither the record nor our precedent supports the majority's conclusion in this case. I respectfully dissent.

### A. Dillard Did Not Abandon His Briefcase.

The evidence presented at the suppression hearing before the district court reflects that on May 26, 1999, the Cleveland police arrived at the Clemont Avenue address to execute a search warrant they had procured. As the officers approached the side door, Dillard, who was carrying a black briefcase, and another person were leaving. Sergeant Thomas Acklin announced that he and the other officers were the police and had a search warrant for the premises. Dillard then either dropped or threw the briefcase onto the ground. As Sergeant Acklin and two other officers proceeded into the Clement Avenue residence to execute the search warrant, Detective Kennelly and three other officers grabbed Dillard and attempted to handcuff him. According to testimony,

Dillard then allegedly pulled a loaded 9mm weapon from his waistband. Following a brief struggle, the officers managed to subdue Dillard and place him under arrest.

It is true that a defendant who abandons property cannot maintain a legitimate expectation of privacy with respect to the property, and subsequently lacks standing to challenge, on Fourth Amendment grounds, admissibility of the evidence found pursuant to a search of that abandoned property. This determination is to be made on a case-by-case basis. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *United States v. Peters*, 194 F.3d 692, 696 (6th Cir.1999) (citing *United States v. Brown*, 635 F.2d 1207, 1211 (6th Cir.1980)).

Two Sixth Circuit cases are particularly instructive. In *United States v. Tolbert*, 692 F.2d 1041 (6th Cir.1982), the actions of an airline passenger who had checked a cocaine-laden suitcase on a flight from Florida were held *not* to have manifested *an* expectation of privacy. The defendant in *Tolbert* checked her luggage, but upon arrival, passed through the baggage claim area without picking up her luggage; when questioned by the authorities, she denied having any luggage. *Id.* at 1043–44. We concluded that the defendant's affirmative disclaimer of the luggage meant that she had abandoned the suitcase and she therefore lacked standing to challenge the search of that luggage. *Id.* at 1044–46.

However, in *United States v. Sanders*, 719 F.2d 882 (6th Cir.1983), a suitcase containing cocaine and marijuana had been checked through on the ticket of an airline passenger flying north from Florida. Believing that she was under surveillance, the passenger left the airport at her destination without retrieving her suitcase from the baggage claim area. When questioned by law enforcement officials, she said that

she had not claimed the suitcase because she was not going straight home. She refused to consent to a search of the suitcase, thus actively indicating an interest in keeping the contents private. *Id.* at 883–84. Under these circumstances, we held that there had been no abandonment. *Id.* at 885–86.

A suitcase or briefcase is property of a kind in which the owner ordinarily has a strong expectation of privacy. Although this expectation can be given up, *Sanders* requires an *affirmative disclaimer* (through actions or words) before a court may determine that the property at issue was abandoned. *Id.* at 886; *see also United States v. Peters*, 194 F.3d 692, 696 (6th Cir.1999) (citing *Sanders* with approval for the proposition that "affirmative disclaimer required for privacy right to be lost").

In the present case, the officers shouted at Dillard to halt, which he did, dropping or flipping his briefcase no more than four feet away in the process. Mere physical separation from the briefcase under these circumstances does not defeat Dillard's standing; he would have to evince an intent to disclaim or otherwise abandon the property. *Smith v. Ohio*, 494 U.S. 541, 543–44, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990). And in fact, the record does not indicate any such affirmative disclaimer. At no time did Dillard state that the briefcase did not belong to him, nor did he drop the briefcase during flight. He apparently dropped it in what appears to have been a reflexive reaction or an attempt at compliance with the officers' order to raise his hands.

The majority relies on an assortment of cases, none of which support a finding of abandonment. In each of these cases the defendant affirmatively disclaimed ownership of the property by tossing or dropping the property while in flight from the police and therefore effectively abandoned

it. *See United States v. Torres*, 949 F.2d 606, 607, 608 (2d Cir.1991) (defendant disclaimed ownership interest in the bag that was searched); *United States v. Morgan*, 936 F.2d 1561, 1570–71 (10th Cir.1991) (defendant threw the shoulder bag while attempting to elude the authorities); *United States v. Frazier*, 936 F.2d 262, 265 (6th Cir.1991) (defendant denied ownership of the bag or knowledge of its contents); *United States v. Knox*, 839 F.2d 285, 287, 293–94 (6th Cir.1988) (defendants "specifically disclaimed ownership of the bag"); *United States v. Collis*, 766 F.2d 219, 222 (6th Cir.1985) (defendant dropped or threw the property away while fleeing from the police); *State v. Oliver*, 368 So.2d 1331, 1334 (Fla.Ct.App.1979) (police attempted to question defendant who was riding his bicycle; defendant continued to ride his bicycle and threw a paper bag to the ground). The majority also attempts to rely on dicta in *United States v. Sims*, 808 F.Supp. 596, 604 n. 14 (N.D.Ill.1992), for the proposition that merely dropping an item to the ground constitutes abandonment for Fourth Amendment purposes. In *Sims*, police officers approached the defendant and another woman who were leaving a bank with a heavy satchel and other items. However, the defendant not only dropped the envelope to the ground, she disclaimed ownership of various other items in her possession, and it therefore was more logical to infer an intent to abandon on her part. *Sims*, 808 F.Supp. at 600. Dillard, in contrast, was not fleeing from the police, he was not attempting to hide the briefcase, and he did not disclaim ownership of the briefcase or the contents therein. In short, his actions did not evince an intent to abandon.

The majority also cites *United States v. Park*, No. 96–6342, 1998 WL 69028 (6th Cir. Feb. 9, 1998) (unpublished), where the defendant, having spotted police officers approaching his trailer, dropped a thermos out of the window, and thus the thermos was deemed to have been "thrown away," i.e., discarded or abandoned. *Park*, 1998 WL 69028, at *1. The intent to abandon is stronger in that instance because the defendants probably hoped the police would not recover the property or not be able to connect it with them. However, in this case, the officers observed Dillard holding the briefcase when they approached him, and he dropped it no more than four feet from where he was standing. There was no way Dillard could have seriously hoped to disassociate himself from that property. *Because* Dillard did not exhibit any intention to abandon *the briefcase*, he " 'exhibited an actual (subjective) expectation of privacy,' " which society would treat as reasonable. *Minnesota v. Carter*, 525 U.S. 83, 109, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Certainly, the present case is at least as strong, if not stronger, for a finding of standing as it was in *Sanders*, where we did find standing. *Consequently*, Dillard did not abandon his briefcase, and he had standing to make his Fourth Amendment challenge.[1]

The fatal flaw in the majority's reasoning is that there is no legal support for the notion that a suspect who drops an item on the ground while remaining stationary, and who continues to remain stationary after dropping the item on the ground, has abandoned the item. All of the case on which the majority attempts to rely involve defendants who dropped items while on

---

1. *United States v. Jabara*, 618 F.2d 1319, 1324–25 (9th Cir.1980) and *United States v. Arboleda*, 633 F.2d 985, 991–92 (2d Cir.1980),

on which the majority also relies, are inapplicable for the same reason that *Park* is inapplicable.

the move or otherwise attempting to elude the police. Dillard, on the other hand, was not on the move at any point during the encounter, and he was in the police officers' plain view. Simply dropping or flipping a briefcase does not evince an intent to abandon.[2]

Arguing otherwise, the majority invokes our decisions in *United States v. Collis*, 766 F.2d 219 (6th Cir.1985) and *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003) and the Tenth Circuit's decision in *United States v. Morgan*, 936 F.2d 1561 (10th Cir.1991) to support its view that Defendant abandoned the briefcase. Those cases are thoroughly distinguishable. Though the majority acknowledges that the *Collis* defendant "dropped" the bag and attempted to flee, it still believes *Collis* was "sufficiently similar" to this case to "warrant the same result." The defendant in *Collis* did not simply "drop" the bag, he threw the bag over a fence. *Collis*, 766 F.2d at 221. The *Collis* defendant clearly had no reasonable expectation of privacy in a bag that he "heaved" over a fence in an effort to forfeit possession. *Id.* Likewise, *Shamaeizadeh* is distinguishable because it is a civil case and the plaintiff there did not have standing to assert an expectation of privacy in the basement of property he owned but did not occupy. *See Shamaeizadeh*, 338 F.3d at 544. Nor is *Morgan* persuasive because defendant there "threw" the bag south of a porch in the backyard of a residence that "abutted an open field in a wooded area" and the "bag would have been plainly visible to those passing by the yard via those open areas." *Morgan*, 936 F.2d at 1571. The bag would therefore be available to passersby, rendering unlikely the possibility

that the defendant would be able to retrieve the bag in the future. *Id. Morgan* reasoned that "abandonment must be voluntary" and that "police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." *Id.* at 1570 (quoting *United States v. Jones*, 707 F.2d 1169,1172 (10th Cir.1983)). Based on the facts here, it cannot be persuasively posited that Defendant voluntarily desired to "forfeit any expectation of privacy" he had in the briefcase. *Id.* (internal quotations omitted).

## B. The Briefcase Search Was Not Incident to a Lawful Arrest.

Additionally, the Fourth Amendment exceptions on which the government attempts to rely are unavailing. For instance, the government suggests that the briefcase search was incident to a lawful arrest. While it appears to be uncontested that Dillard's arrest was lawful, the facts indicate that the search was anything but incident to the arrest.

In *Chimel*, 395 U.S. at 763 (1969), the Supreme Court established the "search incident to a lawful arrest" exception by holding that arresting officers may conduct a warrantless "search of the arrestee's person and the area 'within his immediate control'—constructing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." The rationale for allowing such a search is the protection of law enforcement officers and the preservation of evidence. *Id.* In a subsequent decision, the Supreme Court made clear that officers may search the suspect's person and the area within his immediate control so long as the search

---

**2.** The majority also suggests that Dillard was discarding the briefcase while resisting arrest. A more likely explanation is that he put the briefcase down, or dropped it, not to abandon the briefcase, but so that he would have both hands free during his initial encounter with the police. Even if Dillard attempted to resist arrest, that act, though illegal, does not necessarily mean that he intended to abandon the briefcase.

is substantially contemporaneous with the arrest. *Shipley v. California,* 395 U.S. 818, 819, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969).

However, there are restrictions on this exception. For instance, in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), police conducted a warrantless search of a footlocker seized from the defendant's car. *Id.* at 3–4. The Supreme Court held that a warrantless search incident to a lawful arrest is limited to the defendant's person and areas within his immediate control, and does not extend to personal containers seized from the defendant at the time of the arrest and subsequently reduced to the exclusive control of the police. *Id.* at 15.

In the present case, Dillard had been handcuffed and safely escorted into a police vehicle. The briefcase was recovered from the ground by a police officer, who took it inside to assemble it with the other evidence discovered in the Clemont Avenue residence. The facts of this case are closely analogous to those in *United States v. Calandrella,* 605 F.2d 236 (6th Cir.1979), where we held that once officers have gained exclusive control over a suspect's property, a subsequent search of the property is unreasonable in the absence of a search warrant. We reasoned that "once the agents had seized the item and reduced it to their exclusive control there was no further danger that the defendant would secure therefrom either a weapon or an instrumentality of escape, or would destroy evidence contained in the briefcase. . . . Thus the interests sought to be protected by permitting warrantless searches incident to an arrest were fully vindicated by the seizure of the briefcase at the time of the arrest." *Id.* at 249 (citations omitted).

Instead of following applicable published case authority, the majority relies on an unpublished case that endeavored to distinguish *Chadwick* and *Calandrella* by reasoning that while the searches in those two cases had occurred after the suspect and the property had been transported to the police station, the search at issue had been "conducted while everyone was still at the scene of the arrest." *United States v. Blevins,* 234 F.3d 1270 (Table), 2000 WL 1597821, at \*4 (6th Cir. Oct. 20, 2000) (citations omitted). Yet *the majority opinion exhibits* a fundamental misunderstanding of the appropriate Fourth Amendment inquiry. The appropriate inquiry under these circumstances does not rest on where the search took place, but on whether any exigencies required a protective sweep reaching the contents of the briefcase. It is abundantly clear that once Dillard had been arrested, handcuffed, and placed in the police vehicle, all the officers (of which there were many at the scene) had to do was place the briefcase in a squad car or place it with the other evidence to be collected. There is no conceivable exigency that would reach a protective sweep of a locked briefcase.

The search incident to an arrest rule was created to protect officers from any harm a suspect might inflict with nearby objects, and to prevent destruction of evidence. The majority's reasoning here essentially turns the *Chimel* rule on its head, because it allows an officer relatively free rein to search areas where the suspect was standing when arrested, even *after* the danger has *subsided.* To suggest that the mere fact of an arrest gives a police officer license to search anything long after the exigency has abated would raise form over substance and swallow whole the *Chadwick/Calandrella* rule. *See United States v. Myers,* 308 F.3d 251, 270 (3d Cir.2002) (rejecting a suggestion that a search conducted after a suspect has been arrested, handcuffed, and placed in a squad car

"stray[s]" beyond the parameters that the Supreme Court tried to erect in *Belton.*").

## C. The Briefcase Search Did Not Constitute a Lawful Inventory Search, and The Inevitable Discovery Doctrine Does Not Apply.

The briefcase search did not fall within the lawful inventory search exception to the Fourth Amendment warrant requirement. The inventory search exception requires that (1) the search is conducted pursuant to established police procedures; and (2) the search is not a pretext for gathering evidence. *Colorado v. Bertine,* 479 U.S. 367, 371–74, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The rationale for allowing warrantless inventory searches is to safeguard a defendant's property and to protect the police against any claims of lost property. *Id.* at 372–73.

The government has not pointed to anything in the record establishing that the search was conducted pursuant to any established police procedures. Indeed, this seems unlikely, as the list of property taken from the briefcase later produced during the suppression hearing was incomplete, and omitted mention of other items located in the briefcase, such as toiletries. When questioned as to the incompleteness of the list, Detective Santiago explained that this was because, unlike the drugs and drug paraphernalia, such items as toiletries "held no evidentiary value." (Supplemental Joint Appendix at 457.) This very admission also negates the possibility that this search was anything other than a pretext for gathering evidence. The Supreme Court fairly recently has underscored the notion that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 5, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

The government lamely argues that there is no evidence on the record that the search was not pursuant to a lawful inventory. Yet the government must be reminded that it, not Dillard, bears "the burden of showing that the inventory search was conducted pursuant to standardized criteria." *United States v. Richards,* No. 01–1999, 2003 WL 151417, at *2 (6th Cir. Jan. 17, 2003) (unpublished) (citing *United States v. Gregory,* Nos. 91–6400, 91–6431, 1992 WL 393144, at *7 (6th Cir. Dec. 22, 1992)); *see also Sanders,* 442 U.S. at 759–60. Therefore, the government's argument that the inventory exception applies is wholly unpersuasive.

Finally, the majority's conclusion that the inevitable discovery doctrine applies is misplaced. The government has presented no evidence tending to show that the briefcase's contents would inevitably have been catalogued pursuant to an established inventory procedure. The district court, as does the majority, seems to *assume* that there is an established procedure which would have been followed in this case, but I find no reason to make such an assumption.

## CONCLUSION

The facts of this case, as well as our established precedents, merit suppression of the briefcase evidence. Because I would reverse the district court's judgment and remand with instructions to grant Dillard's motion to suppress, I respectfully dissent from the majority's decision.